STATE of Minnesota, petitioner,
Appellant,

v.

Steven Louis GIVENS, Respondent.

No. C2–95–36.

Supreme Court of Minnesota.

March 8, 1996.

J. Michael Richardson, Hennepin County Attys. Office, Minneapolis, for appellant.

Bradford S. Delapena, Office of State Public Defender, St. Paul, for respondent.

## OPINION

GARDEBRING, Justice.

This is a sentencing appeal by the state which addresses two issues: whether there exist appropriate aggravating factors to support a durational departure in sentencing and whether a criminal defendant may waive the right to be sentenced under the Minnesota Sentencing Guidelines.[1] We hold that suffi-

---

1. Minnesota's sentencing guidelines system is a statutory creation. The legislature established the Sentencing Guidelines Commission and charged it with the creation of standards to guide sentencing discretion. Minn.Stat. § 244.09 (1994). The Minnesota Sentencing Guidelines

cient aggravating factors exist to support the upward departure and further, that a criminal defendant may knowingly, intelligently, and voluntarily waive his right to be sentenced under the guidelines.

The facts of the crime at issue are uncontested. Respondent entered a security building in south Minneapolis on a pretext. Although the record contains no evidence regarding his reason for choosing the victim's apartment, he admits that he knocked on her apartment door and declared that he had video tapes to deliver. When the victim, a 74–year–old woman who walks with a cane, answered her door, respondent grabbed her cane, throwing her off balance, and pushed her to the floor. He then reached inside to grab the victim's purse, which hung on a door knob in the apartment, and fled. When later caught, respondent admitted he stole the purse for money to purchase drugs.

Respondent pled guilty to a first-degree burglary charge, Minn.Stat. § 609.582, subd. 1(c) (1994), and agreed to a plea bargain involving the dismissal of an additional charge of simple robbery and a recommendation to the trial court regarding sentence. Under the guidelines, the presumptive sentence for a first-degree burglary charge for someone with respondent's criminal history is 48 months in prison. The prosecutor and the defense attorney recommended that the court depart upward in respondent's sentence, but stay the sentence and order respondent to enter chemical dependency treatment. Respondent was accordingly sentenced to 96 months and the imposition of the sentence conditionally stayed. The imposed sentence was therefore a "downward dispositional departure" and an "upward durational departure," both of which require the trial court to state its reasons for depart-

ing on the record. Minn. Sent. Guidelines II.D.204 comment (1994). As explanation for the durational departure, the trial court cited the victim's vulnerability due to age, an aggravating factor from the guidelines' nonexclusive list. *See* Minn. Sent. Guidelines § II.D.2.b.(1). Subsequently, respondent violated his probation and the trial court executed the stayed sentence.

On appeal to the court of appeals, respondent contested the upward durational departure, arguing that there were no aggravating factors present. *State v. Givens*, No. C2–95–36, slip op. at 2, 1995 WL 130621 (Minn.App., Mar. 28, 1995). The court of appeals held that in order for vulnerability due to age properly to be an aggravating factor, a defendant must exploit the vulnerability to commit the offense. *Id.* Because respondent stated he had no knowledge of who lived in the victim's apartment before he knocked on the door, the court of appeals reasoned that he did not exploit the vulnerability. Moreover, there was no evidence that he would not have attempted to steal from anyone who had opened the door. *Id.* The court of appeals also ruled on an aggravating factor not cited by the trial court, namely that respondent violated the victim's "zone of privacy." [2] The court of appeals held that, because he only reached into the apartment, he did not occupy, and thereby violate, her zone of privacy. Finding that neither aggravating factor served to justify the departure, the court of appeals reversed, reducing the sentence by one-half. *Id.*

On appeal, the state contests the court of appeals' reasoning, urging that the facts do indeed demonstrate that respondent exploited the victim's age and infirmity and also invaded her zone of privacy. The key, con-

---

are designed to imbue the practice of sentencing with a measure of consistency and rationality and a respect for the realities of the resources available to corrections officials. The Sentencing Guidelines Commission also created a grid providing a simple means of combining criminal history and offense severity to reach a "presumptive" sentence. Minn. Sent. Guidelines § I (1994). The trial judge is to impose the presumptive sentence, unless substantial and compelling circumstances are present to justify a departure from that presumptive sentence. *Id.* at II.D. The commission has provided a nonex-

clusive list of factors that may be used to justify a departure. *Id.* at II.D.2.b. If a judge decides to depart, he or she must provide written reasons specifying the nature of the circumstances prompting the departure. *Id.* at II.D.

2. The "zone of privacy" departure factor is a judicial creation, which recognizes the impact on a victim of the occurrence of the crime in the victim's home. *See State v. Morales*, 324 N.W.2d 374 (Minn.1982).

tends the state, is the fact that respondent proceeded with the crime once the victim opened her door. In other words, the state argues that, had respondent knocked on a different door and found himself facing a large, muscular man, he probably would not have continued with the burglary. In addition, respondent entered the apartment building under false pretenses and moved inside the apartment sufficiently to knock the victim down and grab her purse, thus implicating the "zone of privacy" departure factor.

Respondent argues that the facts necessary to support the trial court's durational departure are absent in this case. He insists that the court of appeals' reasoning was correct and therefore, in order for an aggravating factor to be present, a defendant must have taken advantage of that factor. *Givens*, No. C2–95–36, slip op. at 4. In addition, respondent asserts that regardless of the presence or absence of aggravating factors, the upward departure violated the concept of proportionality governing the application of the guidelines. *See State v. Garcia*, 302 N.W.2d 643, 646–47 (Minn.1981). Citing other cases involving departures based on vulnerability due to age, respondent argues that his actions fall at the minimum end of any scale of conduct in such cases. Therefore, he urges, because departures are reserved for instances where the defendant's conduct was "significantly more serious than typically involved in the commission of the offense" in question, a double departure in this case is inappropriate. *State v. Best*, 449 N.W.2d 426, 427 (Minn.1989).

The Minnesota Sentencing Guidelines are intended to promote rational and consistent sentencing. The Sentencing Guidelines Commission developed a simple cross-referencing grid so courts could easily reach a "presumptive" sentence proportional to the severity of the offense and the extent of the offender's criminal history. *See* Minn. Sent. Guidelines § IV (1994). This court has held that the presumptive sentence should be imposed, unless the circumstances of the crime indicate that a departure is warranted. *Gar-*

*cia,* 302 N.W.2d at 647. If a trial court decides to depart, it must provide written reasons for doing so. *Williams v. State*, 361 N.W.2d 840, 843 (Minn.1985); Minn. Sent. Guidelines § II.D. The commission has produced a nonexclusive list of appropriate aggravating and mitigating factors to assist a trial court considering departure in its analysis. *See* Minn. Sent. Guidelines § II.D.2. While there are only "a small number of cases where substantial and compelling aggravating * * * factors" militate towards departing from the guidelines, the decision to depart is one for the trial court. Minn. Sent. Guidelines II.D.01 comment. This court is loathe to overturn the exercise of that discretion without clear evidence of its abuse. *See Garcia,* 302 N.W.2d at 647.

■ Among the departure factors included in the guidelines is the exploitation of the victim's vulnerability. The guidelines state that when a defendant commits a crime against a victim who was "particularly vulnerable due to age, infirmity or reduced physical * * * capacity * * * which was known" to the defendant, the trial court may depart upward when imposing the sentence. Minn. Sent. Guidelines § II.D.2.b.(1). Once the victim opened the door, respondent could not have failed to realize that she posed no threat to his intentions of stealing money to buy drugs. At that point, respondent knew of the victim's age and infirmity. He then actively capitalized on those aspects of his chosen victim by reaching for her cane to knock her to the floor.

We hold, on these facts, that the upward durational departure was justified by respondent's exploitation of the victim's vulnerability and that the sentence does not exaggerate the seriousness of the crime.[3] The trial court acted within its discretion when it sentenced respondent.

Although our holding on the departure factor could be dispositive of this case, we deem it appropriate to reach the other issue raised by the state on appeal. The state asks this court to establish a rebuttable presumption that if a defendant agrees to a departure as

3. Because we find the aggravating factor cited by the trial court to be sufficient to justify the departure, we do not address whether the additional

aggravating factor identified by the state, invasion of the victim's zone of privacy, is present.

part of a plea bargain, the departure needs no additional justification.

Respondent notes that in *Garcia*, we stated that an attempt "by the parties to limit sentence duration does not create a 'substantial and compelling circumstance' which may be relied upon as justifying a departure from the Guidelines." *Garcia*, 302 N.W.2d at 647. Respondent further contends that, to the extent the state wishes to see a rebuttable presumption in operation, it currently exists in the form of this court's great deference to the sentencing discretion of the trial court. *See Id.*

■ We believe that the real question raised by this case is whether a defendant may waive his or her right to be sentenced under the guidelines. Since 1980, defendants in Minnesota have benefitted from the protection of the guidelines' regulation of sentencing discretion. The guidelines exist to maintain the presence of rationality in sentencing decisions. To the extent that they restrict the discretion of a sentencing judge, the guidelines offer a measure of evenhandedness and predictability to defendants. Their purpose is to ensure that defendants will not be sentenced based upon inappropriate grounds such as race, gender or social or economic status.

However, it has long been settled law that courts will honor a defendant's lawful, "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Currently, we allow defendants to waive a variety of their rights, including their *Miranda* rights, their right to a jury trial, and their right to be present at trial. *See, e.g., State v. Kilburn*, 304 Minn. 217, 231 N.W.2d 61, 65 (1975) (jury trial);

*State v. Linder*, 268 N.W.2d 734 (Minn.1978) (*Miranda* rights); Minn. R.Crim. P. 26.03, subd. 1(2) (1994) (right to be present at trial). We see no reason not to allow a defendant to agree to a departure as part of a plea bargain with the prosecutor. Accordingly, today we hold that defendants may relinquish their right to be sentenced under the guidelines.[4]

■ Such a waiver, however, must conform to the usual limitations accompanying the waiver of constitutional or statutory rights, that is, it must be knowing, intelligent, and voluntary. *See Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981). The defendant must have been advised of his or her right to be sentenced under the guidelines, which, of course, includes the possibility of just such a departure as discussed above, and have had the opportunity to consult counsel. In addition, the waiver must be approved by the trial court. *See Kilburn*, 231 N.W.2d at 65. An examination by the sentencing court, consistent with the approach of Minn. R.Crim. P. 15, will meet this requirement.[5]

Because we find that substantial and compelling circumstances exist to support the trial court's departure in this case, there is no need to inquire into the propriety of the defendant's waiver in this case. As we noted above, the trial court did not abuse its sentencing discretion. The decision of the court of appeals, therefore, is reversed.

Reversed.

---

4. To the extent that *State v. Garcia*, 302 N.W.2d 643 (Minn.1981), is inconsistent, it is overruled.

5. We note that the federal courts have drawn a distinction between the waiver of rights necessary to secure a fair trial and other rights. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 236–41, 93 S.Ct. 2041, 2052–55, 36 L.Ed.2d 854 (1972). In the case of the former, the U.S. Supreme Court has held that an effective waiver must be knowing, intelligent, and voluntary. *Id.* at 236–37, 93 S.Ct. at 2052–53. But, in the case of the latter, some federal courts of appeals have allowed defendants to waive rights they did not realize they possessed. *See, e.g., Camp v. United States*, 587 F.2d 397, 400 (8th Cir.1978) (citing *Schneckloth*). These rights generally have been statutory. *Id.* We do not intend this case to stand for the proposition that defendants may now waive any or all statutory rights, only that they may waive their right to be sentenced under the guidelines as part of a plea bargain. Therefore, we limit our holding in this case accordingly.